IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

LARRY TYRONE WATKINS,          )
                               )
    Plaintiff,                 )
                               )       3:13cv0179
v.                             )       No. 3:13-mc-00007
                               )
CCA-CORPORATION OF AMERICA, et al., )   Judge Campbell
                               )
    Defendants.                )

## MEMORANDUM OPINION

Plaintiff Larry Tyrone Watkins, a state inmate presently detained at the Metro-Davidson County Detention Facility in Nashville, Tennessee, which is operated by CCA, filed his *pro se* complaint in this action (ECF No. 1), seeking damages and other relief under 42 U.S.C. § 1983. Because the plaintiff is a prisoner who proceeds *in forma pauperis* against government officials, the complaint is before the court for an initial review in accordance with 28 U.S.C. §§ 1915(e)(2) and 1915A.

I.   FACTUAL ALLEGATIONS

This action is closely related to another action filed by the same plaintiff in September 2012, largely concerning the same incident. *Watkins v. Kinnamon*, Civil Action No. 3:12-cv-984. In that case, the plaintiff's claims against CCA, Y. Bermudez, and Chief Perry were dismissed for failure to state a claim for which relief could be granted under 42 U.S.C. § 1983, but the plaintiff's equal-protection claim against Officer Terry Kinnamon (who is not named as a defendant in the present complaint) was allowed to proceed past the initial review.

In the present action, the plaintiff again seeks to bring suit against CCA, Chief Perry and Unit Manager Y. Bermudez. In addition, he names as defendants Warden Blair Leibach, Chief Pittman, A/W. J. Sausedo, SGO Cato, and Investigator Davis.

The plaintiff states that he is African American, and alleges that on June 21, 2012, he was involved in a minor altercation with a white inmate, David Summers, at the facility where he is incarcerated. The plaintiff insists that Summers initiated the incident by making racist comments against the plaintiff, and picked up a chair as if to strike the plaintiff with it. The plaintiff, in response, gave the other inmate a "playful" strike

on the chin. As a result, the plaintiff was wrongfully, he claims, written up for assault. He was placed in segregation, lost visitation privileges, and has a major disciplinary infraction on his record. His custody level has been increased and he was moved to "a tiny 3 man cell . . . in a small unit." (ECF No. 1, at 8.) The plaintiff was initially supposed to be in segregation for 45 days, but he claims that "the Warden knew that they meaning he & Chief Pittman signed off to[o] quick and let me out in 20 or 22 days." (ECF No. 1, at 7.) The plaintiff asserts that the Warden "knew he and his staff did a terrible investigation," but nonetheless allowed the disciplinary infraction and the other punishment the plaintiff received to stand.

The plaintiff states he has written numerous "informals" about this incident to the Warden, to A/W Sausedo, and to Chiefs Pittman and Perry, complaining in particular that Officer Terry Kinnamon falsely accused him of assault and used racial slurs against him, but that no one has taken action regarding that incident.

The plaintiff alleges that Investigator Davis and Chief Perry "tried to get a horseplaying substitute for the assault" (ECF No. 1, at 7), but when the plaintiff insisted that Summers should be written up too, they took the offer off the table "because they did not want to go and [get] another write-up for him." (ECF No. 1, at 8.)

The plaintiff appears to be complaining that Warden Leibach and Chief Pittman did not do anything to Summers because he is white, but the plaintiff does not state any facts to support that claim. The plaintiff alleges generally that "they took [the plaintiff's] visits and still allow others who actually got to fighting continue to visit." (Id.)

The plaintiff claims that Chief Perry has called him to his office and spoken to him "real dirty, nasty, & disrespected saying if it were up to [him], [the plaintiff's] black ass would still be in segregation." (Id.)

The plaintiff states he has seen the videotape of the incident with Investigator Davis and Unit Manager Cosby, and has explained "the whole ordeal" to them, to no effect. (Id.) The white inmate has continued to get in fights and cause trouble but "still stayed R Dap." (Id.)

The plaintiff states that he is still waiting to hear back from some of his informal grievances, but that Chief Perry ignores him, and Warden Leibach has never responded.

The plaintiff seeks compensatory damages from the defendants for "stress and anxiety," for failure to properly investigate the incident, and for "cahooting" with each other. He also seeks an injunction requiring

the defendants to expunge the disciplinary report from his record.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 1915(e)(2), the court must conduct an initial review of any civil complaint filed *in forma pauperis*, and must dismiss the complaint or any portion of it that fails to state a claim upon which relief can be granted, or is frivolous. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.* § 1915A(a), and dismissal of any claims that are frivolous or fail to state a claim for which relief can be granted. *Id.* § 1915A(b). The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

Although *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with *pro se* complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## III. LAW AND ANALYSIS

To state a claim under § 1983, a plaintiff must "identify a right secured by the United States Constitution and deprivation of that right by a person acting under color of state law." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992); *West v. Atkins*, 487 U.S. 42, 48 (1988). Claims against entities or individuals who are not state actors and "persons" subject to suit under § 1983 must be dismissed.

Claims that do not state a deprivation of a right secured by the Constitution or federal law must likewise be dismissed.

## A. The Claims Against the Supervisory Officials

The plaintiff in this case does not expressly identify the right or rights he believes have been violated, but his complaint is presented on a complaint form for claims under 42 U.S.C. § 1983. In the related complaint, the Court (Trauger, J.) found that the plaintiff stated a claim against Officer Terry Kinnamon, who is not named as a defendant here, under § 1983 based upon the alleged violation of the plaintiff's rights under the Equal Protection Clause.

The claims in the present case, however, are all asserted against supervisory personnel, and they all appear to be based entirely on these defendants' handling of the disciplinary proceedings against the plaintiff and their denial of the plaintiff's numerous grievances related to Terry Kinnamon's treatment of the plaintiff. The plaintiff clearly alleges that Kinnamon is racist and that he falsely accused the plaintiff of assault while not charging Summers with an infraction, even though Summers initiated the altercation, because Summers is white and the plaintiff is black. The complaint, however, does not assert that the defendants named in this action were personally involved in the allegedly discriminatory acts.[1] "Because § 1983 liability cannot be imposed under a theory of *respondeat superior*, proof of personal involvement is required for a supervisor to incur personal liability." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005). "At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). The plaintiff here does not allege that defendants Leibach, Perry, Sausedo, Davis, Pittman, Cato or Bermudez personally committed any discriminatory acts, nor does he aver that they acquiesced in the conduct of employees under their supervision, except by denying the plaintiff's post-hoc grievances.

To the extent the plaintiff's claims against these defendants are based upon their failure to investigate or uphold his grievances, these allegations are not sufficient to state a claim under § 1983 either. *Cf. Lee*

---

[1] The plaintiff alleges that Chief Perry has spoken disrespectfully to him and used racial slurs against him, but he does not allege that Chief Perry has actually taken any action against him, other than denying his grievances based on the altercation with Summers and Kinnamon's handling of the incident.

v. Mich. Parole Bd., 104 F. App'x 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance."). See also Dunn v. Martin, 178 F. App'x 876, 878 (11th Cir. 2006) (holding that allegations that the defendants failed to respond to plaintiff's letters and grievance and did not follow their own rules pertaining to responding to grievances did not state a claim under § 1983, because a prisoner does not have a constitutionally protected liberty interest in an inmate grievance procedure); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (holding that the Constitution creates no entitlement to voluntarily established grievance procedure). The claims against Leibach, Sausedo, Pittman, Davis, Cato, Bermudez and Perry are therefore subject to summary dismissal for failure to state a claim for which relief may be granted.

### B. The Claims Against CCA

The does not contain any specific allegations relating to CCA. Thus, it appears that the plaintiff seeks to hold CCA liable for the acts of its employees merely on the basis that CCA is the employer. Liability under § 1983 cannot be imputed to employers based on the actions of their employees; rather, the claim must be based on the discriminatory policies or actions of the entity itself. See Miller v. Calhoun Cnty., 408 F.3d at 817 n.3 (respondeat superior liability is not available under § 1983). The complaint contains no allegations linking the plaintiff's injuries to a policy or custom adopted by CCA. Accordingly, the court finds that the complaint fails to state a claim against CCA.

## IV. CONCLUSION

For the reasons set forth herein, the complaint will be dismissed in its entirety for failure to state a claim upon which relief may be granted. An appropriate order is filed herewith.

Todd Campbell
United States District Judge